

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

JUDGE CROTTY

| | |
|---|---|
| PEERLESS INDEMNITY INSURANCE COMPANY, f/k/a ATLAS ASSURANCE COMPANY OF AMERICA<br><br>Plaintiffs,<br><br>v.<br><br>AXA GENERAL INSURANCE HONG KONG LIMITED f/k/a UNION INSURANCE SOCIETY OF HONG KONG,<br><br>Defendants. | Case No: _____ - cv - 07 |



## COMPLAINT

Plaintiff, Peerless Indemnity Insurance Company, formerly known as Atlas Assurance Company of America, as and for its Complaint against the Defendant, hereby state as follows:

### THE PARTIES

1. Plaintiff, Peerless Indemnity Insurance Company ("Peerless"), f/k/a Atlas Assurance Company of America ("Atlas") is an insurance corporation organized and existing under the laws of the State of Illinois with its principal offices located at 62 Maple Avenue, Keene, New Hampshire.

2. At all times relevant hereto, Peerless is part of the Liberty Mutual Group.

3. Defendant, AXA General Insurance Hong Kong Limited ("AXA Hong Kong") f/k/a Union Insurance Society of Hong Kong ("Union Hong Kong") is an insurance corporation organized and existing under the laws of Hong Kong, PRC, with its principal offices located at 30/F PCCW Tower, Taikoo Place, 979 King's Road, Quarry Bay, Hong Kong.

4. At all times relevant hereto, Defendant AXA Hong Kong was and is part of the AXA Group.

## JURISDICTION AND VENUE

5. The court has subject matter jurisdiction over the within controversy pursuant to 28 U.S.C. §1332 as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. The court has personal jurisdiction over Defendant AXA Hong Kong based upon the fact that it regularly conducts business within the State of New York and/or continuously and systematically avails itself of the courts of this District.

7. Venue is proper in the Southern District of New York based upon the fact that Defendant AXA Hong Kong regularly conducts business within the State of New York and/or continuously and systematically avails itself of the courts of this District.

## BACKGROUND FACTS

8. At all times relevant hereto, GRE USA was a subsidiary of the Guardian Royal Exchange ("GRE-UK") and was the United States branch of GRE-UK; GRE-UK's operations were worldwide, including continental Europe, Hong Kong and Asia.

9. In or about 1973, GRE USA and GRE-UK became involved in a pooling and reinsurance program, the Excess and Casualty Reinsurance Association ("ECRA").

10. The ECRA was an unincorporated association (or "pool") of insurance companies, each of which was assigned a specific share of profit and loss generated by

reinsurance contracts entered into between ECRA and the insurance companies that sought reinsurance coverage from ECRA.

11. ECRA's business was managed by the Excess and Treaty Management Corporation ("ETMC"), which entered into management agreements and reinsurance treaties with the individual pool members ("the ETMC/ECRA Program").

12. In 1982, ECRA ceased issuing new reinsurance treaties, but the pool continued to use ETMC as its manager for claims arising under the run-off treaties. The members of the pool signed a Run-Off Agreement, effective December 31, 1982, which authorized ETMC to continue servicing existing ECRA business.

13. In or about December 1973, Atlas Assurance Company Ltd ("Atlas, Ltd"), a GRE-UK company, became involved in the ETMC/ECRA pool, initially taking three (3) shares in the Property-Casualty Syndicate of the pool.

14. On or about December 31, 1974, Atlas Ltd increased its participation in the Property-Casualty Syndicate to four (4) shares.

15. On or about December 31, 1977, Atlas Ltd again increased its participation in the Property-Casualty Syndicate from four (4) to nine (9) shares.

16. On or about January 1, 1978, Atlas, Ltd became a domestic U.S. corporation under the laws of the State of New York and changed its name to Atlas Assurance Company of America.

17. Atlas became a subsidiary of GRE USA and wrote insurance and reinsurance in the United States as part of GRE USA.

18. Atlas was licensed and Peerless as successor in interest to Atlas is licensed to do business in New York.

19. In or about February 1978, Atlas entered into a retrocessional agreement with Guardian Reinsurance Company, Zurich (GRZ), also a GRE-UK company and subsidiary, whereby Atlas would retrocede four (4) of its nine (9) shares in the Property-Casualty Syndicate to GRZ.

20. Under the foregoing arrangement, Atlas was required to reserve and pay the full amount billed to it by the pool (9 shares) but it was then to be indemnified by GRZ for four (4) of the nine (9) shares or 44.44% of any paid loss and reserves.

21. Upon information and belief, at all relevant times, GRZ paid losses and established reserves that were retroceded to it by Atlas on the ETMC/ERCA Program consistent with the four (4) shares of the Property-Casualty Syndicate.

22. In or about January 1, 1994, GRE-UK, the parent of both Atlas and GRZ, entered into internal agreements whereby the four (4) shares retroceded by Atlas to GRZ were transferred from GRZ to another GRE-UK subsidiary, Union Hong Kong, along with all "run off" of discontinued reinsurance treaty business, together with reserves under any excess of loss contracts.

23. Upon information and belief, the agreement and records evidencing the transfer of the four (4) shares from GRZ to Union Hong were maintained by GRE-UK and Union Hong Kong and are now maintained by their successors in interest, AXA Group and AXA Hong Kong.

24. Upon information and belief, at all relevant times, Union Hong Kong paid losses and established reserves that were retroceded to it by Atlas on the ETMC/ERCA Program consistent with the four (4) shares of the Property-Casualty Syndicate.

25. In 1999, GRE-UK and all of its subsidiaries and affiliated companies, including Atlas and Union Hong Kong, was purchased by the AXA Group (formerly known as Sun Life).

26. Simultaneous with the AXA Group's purchase of GRE-UK and all of its subsidiaries and affiliated companies, the Liberty Mutual Group purchased GRE USA and its member companies including Atlas, from AXA Group. Union Hong Kong remained with the AXA Group.

27. Subsequent to its purchase by the AXA Group, Union Hong Kong changed its name to AXA General Insurance Hong Kong Limited.

28. In or about 2005, subsequent to its purchase by the Liberty Mutual Group, Atlas changed its name to Peerless Indemnity Insurance Company.

29. Since the purchase of GRE USA by the Liberty Mutual Group, Defendant AXA Hong Kong has never paid or reserved any amounts that were retrocede to it by Peerless on the ETMC/ERCA Program consistent with the four (4) shares retroceded to it under the Property-Casualty Syndicate, despite repeated requests from Peerless.

30. Despite Defendant AXA Hong Kong's admission that it assumed the ECRA pool via portfolio transfer from GRZ in 1994 under a "Portfolio Transfer Agreement" between GRZ and AXA Hong Kong's predecessor, and despite AXA Hong Kong's admission that prior to the purchase of GRE USA by the Liberty Mutual Group, AXA Hong Kong accepted billings from GRE USA in connection with the ECRA pool, Defendant AXA Hong Kong has failed to pay and honor its obligations with Peerless regarding the ETMC/ERCA Program, to the financial detriment and harm to Peerless.

31. The total amount due and owing to Plaintiff Peerless from Defendant AXA currently under the agreement is $2,015,141.26, consisting of $801,062.02 in indemnity and expense paid under the ECRA/ETMC program, and $1,214,079.14 in loss reserves .

## COUNT I

## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §2201, ET SEQ

32. Plaintiff Peerless repeats the foregoing allegations as though set forth at length herein.

33. Upon information and belief, Defendant AXA Hong Kong regularly conducts business within the State of New York and has availed, and continues to avail itself of the courts of this jurisdiction and is therefore subject to the laws and regulations governing the insurance and reinsurance industry herein.

34. Upon information and belief, Defendant AXA Hong Kong is an "unauthorized alien insurer" as contemplated by New York's insurance laws and regulations.

35. As such, Defendant AXA Hong Kong is subject to the provisions of §1213(c)(1)(A) of McKinney's Insurance Law, which requires that before any unauthorized foreign or alien insurer or reinsurer files any pleading in any proceeding against it, such insurer or reinsurer must post sufficient security to secure payment of any final judgment against it.

36. As such, Defendant AXA is required to deposit with the clerk of the court cash, securities or a bond with good and sufficient sureties in an amount sufficient to secure payment of any final judgment which may be rendered in the proceeding, in conformity with Regulation 114 of the New York Insurance Regulations, 11 N.Y. Comp. Codes R. & Regs. § 126.

WHEREFORE, Plaintiff Peerless demands judgment in its favor and against Defendant AXA Hong Kong, requiring that Defendant AXA Hong Kong post security in the amount of $2,015,141.26, before Defendant AXA Hong Kong is permitted to file any pleading in this action.

## COUNT II

**DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §2201, ET SEQ.**

37. Plaintiff Peerless repeats the foregoing allegations as though set forth at length herein.

38. Plaintiff Peerless, by and through its predecessors as described above, and Defendant AXA Hong Kong, by and through its predecessors and via transfers of certain interests as described above, were and are parties to a retrocessional reinsurance agreement whereby Plaintiff Peerless would retrocede to Defendant AXA Hong Kong a specified portion of risk that Plaintiff Peerless reinsured through the ETMC/ECRA pool, and Defendant AXA Hong Kong would pay Plaintiff Peerless for the amounts retroceded.

39. Prior to its acquisition by the AXA Group, Defendant AXA Hong Kong and/or its predecessors made payment on any and all amounts ceded to it under the retrocessional agreement.

40. Plaintiff Peerless and Defendant AXA Hong Kong acquired all of the rights, interests, liabilities and obligations of their respective predecessors as described above.

41. Plaintiff Peerless now seek a declaration that the retrocessional agreement is enforceable and binding upon Defendant AXA Hong Kong, and that Plaintiff Peerless is entitled to payment from Defendant AXA Hong Kong under the retrocessional agreement for the amount herein alleged.

WHEREFORE, Plaintiff Peerless demands judgment in its favor and against the Defendant AXA Hong Kong, declaring that the Defendant AXA Hong Kong is obligated to indemnify Plaintiff Peerless in accordance with the retrocessional agreement and ordering the Defendant AXA Hong Kong to pay all amounts claimed by Plaintiff Peerless under the retrocessional agreement, as well as costs, interest and reasonable attorneys fees incurred by Plaintiff Peerless in pursuing this action.

## COUNT III

### DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §2201, ET SEQ

42. Plaintiff Peerless repeats the foregoing allegations as though set forth at length herein.

43. Upon information and belief, Defendant AXA Hong Kong regularly conducts business within the State of New York and has availed, and continues to avail itself of the courts of this jurisdiction and is therefore subject to the laws and regulations governing the insurance and reinsurance industry herein.

44. Upon information and belief, Defendant AXA Hong Kong is an "unauthorized alien insurer" as contemplated by New York's Insurance Law.

45. As such, Defendant AXA Hong Kong is subject to the provisions of Regulation 133 of the New York Insurance Regulations, 11 N.Y. Comp. Codes R. & Regs. § 126. for the securitization of all outstanding reserves including incurred but not reported ("IBNR") claims billed by Plaintiff Peerless to Defendant AXA Hong Kong representing Defendant AXA Hong Kong's retrocessional participation in the ETMC/ERCA Program.

46. Upon information and belief, Defendant AXA Hong Kong has not complied with New York Insurance Regulation 133 regarding the posting of a Letter of Credit representing its retrocessional share of the reserves for the ETMC/ECRA Program, to the detriment of Peerless.

WHEREFORE, Plaintiff Peerless demands judgment in its favor and against Defendant AXA Hong Kong, requiring that Defendant AXA Hong Kong to post a Letter of Credit in compliance with Regulation 133 of the New York Insurance Regulations, 11 N.Y. Comp. Codes R. & Regs. § 126.for all outstanding reserves including IBNR amounts billed by Plaintiff Peerless to Defendant AXA Hong Kong representing Defendant AXA Hong Kong's retrocessional participation in the ETMC/ERCA Program.

## COUNT IV

### BREACH OF CONTRACT

47. Plaintiff Peerless repeats the foregoing allegations as though set forth at length herein.

48. Plaintiff Peerless and Defendant AXA Hong Kong, by and through their predecessors, entered into a contractual arrangement whereby Defendant AXA Hong Kong would indemnify Plaintiff Peerless for a specified portion of Plaintiff Peerless' reinsurance commitment under the ETMC/ECRA pool.

49. Plaintiff Peerless is not in possession of the contract documents, but the existence and terms of the contract between Plaintiff Peerless and Defendant AXA Hong Kong will be demonstrated through ancillary evidence. Moreover, Plaintiff Peerless believes and therefore avers that the Defendant AXA Hong Kong is in possession of the documents specifically

demonstrating Defendant AXA Hong Kong's obligations to Plaintiff Peerless under the contract since they were maintained by GRE-UK and AXA Hong Kong, now members of the AXA Group.

50. Defendant AXA Hong Kong has breached its contractual obligations to Plaintiff Peerless by failing and/or refusing to honor its contractual obligations and tender payment to Plaintiff Peerless of the ceded amounts, as described above.

51. As a result of Defendant AXA Hong Kong's breach of its contractual obligations, Plaintiff Peerless has been damaged in the amount of $2,015,141.26.

WHEREFORE, Plaintiff Peerless demands judgment in its favor and against Defendant AXA Hong Kong, ordering the Defendant AXA Hong Kong to pay all amounts claimed by Plaintiff Peerless under the retrocessional agreement, as well as costs, interest and reasonable attorney fees incurred by Plaintiff Peerless in pursuing this action.

          NELSON LEVINE de LUCA & HORST, LLC

BY: _____
      MICHAEL R. NELSON, ESQUIRE
      TIMOTHY W. STALKER, ESQUIRE
      MICHAEL J. KURTIS, ESQUIRE
      ATTORNEYS FOR PLAINTIFFS
      120 Broadway
      Suite 955
      New York, NY 10271
      (212) 233-0130
      tstalker@nldhlaw.com

Dated: August 24, 2007